IN THE

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 23-13672
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AMOS CHRISTOLIN,

Defendant-Appellant.
_____

A DIRECT APPEAL OF A CRIMINAL CASE
FROM THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA, ATLANTA DIVISION
_____

INITIAL BRIEF

LEIGH ANN WEBSTER
Georgia State Bar Number: 968087
Strickland Webster, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
404-590-7967

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

  versus                               APPEAL NO. 23-13672

AMOS CHRISTOLIN,

        Defendant - Appellant.

_____/

## CERTIFICATE OF INTERESTED PARTIES

      Pursuant to Fed. R. App. P. 26.1 and 11th Cir. Rule 26.1-1, counsel for certifies that the following listed attorneys, persons, associations of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

      Counsel hereby certifies that the following may have an interest in the outcome of this appeal:

      Banks, Gabe - Former counsel for Defendant/ Appellant Christolin;

      Brockington, C. Brock - Assistant United States Attorney, Northern District of Georgia;

      Buchanan, Ryan K. – United States Attorney, Northern District of Georgia;

Christolin, Amos – Defendant/ Appellant;

Durogel, Jean Yves – Former Co-Defendant;

Harris, Erin - Assistant United States Attorney, Northern District of Georgia;

Joy, Nicholas N. – Assistant United States Attorney, Northern District of Georgia;

King, Hon. Janet F. - – United States Magistrate Judge, Northern District of Georgia;

Larkins III, Hon. John K. – United States Magistrate Judge, Northern District of Georgia;

Rockwell, Renee Regard – Former counsel for Defendant/ Appellant Christolin;

Secret, Akil K. – Former counsel for Defendant/ Appellant Christolin;

Strongwater, Emily – Former counsel for Defendant/ Appellant Christolin;

Strongwater, Jay Lester - Former counsel for Defendant/ Appellant Christolin;

Thompson, Teri L. – Counsel for former Co-Defendant Durogel;

Totenberg, Hon. Amy – United States District Judge, Northern District of Georgia;

Val, Ovide - Former counsel for Defendant/ Appellant Christolin;

Webster, Leigh Ann – Counsel for Defendant/ Appellant.

No publicly-traded company or corporation has an interest in the outcome of this appeal or case.

Dated this 12th day of July, 2024.

/s/ *Leigh Ann Webster*
Leigh Ann Webster
Georgia Bar No. 968087

Strickland Webster, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
(404) 590-7967

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a), the Defendant-Appellant requests oral argument.

## STATEMENT OF TYPE SIZE AND STYLE

Pursuant to 11th Cir. R. 28-2 (d), counsel for Appellant hereby certifies that the size and style of type used in this brief is Book Antiqua 14 PT.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES .........................................................1

STATEMENT REGARDING ORAL ARGUMENT ........................................... i

STATEMENT OF TYPE SIZE AND STYLE......................................................ii

TABLE OF AUTHORITIES ................................................................................. v

STATEMENT OF JURISDICTION .................................................................. vii

STATEMENT OF THE ISSUES...........................................................................1

STATEMENT OF THE CASE ..............................................................................2

   I.   Course of Proceedings....................................................................................2

   II.  Statement of Facts .........................................................................................2

      A.  Motion to Suppress Statements .............................................................2

      B.  Motion in Limine ...................................................................................9

      C.  Trial.....................................................................................................10

      D.  Verdict and Sentencing .......................................................................17

STANDARD OF REVIEW.................................................................................18

SUMMARY OF THE ARGUMENT ..................................................................19

ARGUMENT AND CITATIONS OF AUTHORITY.........................................21

   I.   The district court erred by denying Mr. Christolin's motion to
suppress his statements....................................................................................21

      A.  Mr. Christolin unequivocally invoked his right to remain silent....23

      B.  Mr. Christolin's purported waiver of his right was not knowing
and voluntary due to Agent Phillipe's limited Creole abilities. .............24

      C.  The government cannot meet its burden to establish that this error
was harmless beyond a reasonable doubt. ................................................26

   II.  The district court violated Mr. Christolin's Confrontation Clause
rights by admitting his statement without the agent who interpreted his
statements to cross-examination.....................................................................28

      A.  The introduction of Mr. Christolin's interpreted statements violated
his Confrontation Clause rights................................................................29

      B.  The government cannot meet its burden to show that the error was
harmless beyond a reasonable doubt. .......................................................32

CONCLUSION ......................................................................................35

CERTIFICATE OF COMPLIANCE..................................................................36

CERTIFICATE OF SERVICE...........................................................................37

# TABLE OF AUTHORITIES

## SUPREME COURT CASES

*Crawford v. Washington*, 541 U.S. 36, 68 (2004) .............................................28, 32

*Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986) ...............................................32

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966)............................................. passim

*Missouri v. Seibert*, 542 U.S. 600, 608 (2004) ......................................................21

*Smith v. Arizona*, No. 22-899, 602 U.S. ___, manuscript op. at *2 (June 21, 2024).....................................................................................................................29

## CIRCUIT CASES

*United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004) .....................23, 24

*United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010)......................18

*United States v. Charles*, 722 F.3d 1319, 1323-25 (11th Cir. 2013)..............28, 29

*United States v. Curbelo*, 726 F.3d 1260, 1273-74 (11th Cir. 2013) ...................31

*United States v. Khoury*, 901 F.2d 948, 960 (11th Cir. 1990) ..............................27

*United States v. Mateos*, 623 F.3d 1350, 1365 (11th Cir. 2010). ........................18

*United States v. Richard*, 678 F. App'x 927, 938-40 (11th Cir. 2017)................31

*United States v. Stewart*, 576 F.2d 50, 55 (5th Cir. 1978)...................................27

*United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007)...........................18

*United States v. Youte*, 769 F. App'x 685, 688 (11th Cir. 2019) ................3, 8, 25

## STATUTES

28 U.S.C. § 1291 ...................................................................................... vi

## RULES

11th Cir. R. 28-2 (d) .................................................................................. ii

Federal Rule of Appellate Procedure 4 ............................................................ vi

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ......................................36

Federal Rule of Appellate Procedure 34(a)....................................................... i

## STATEMENT OF JURISDICTION

The Eleventh Circuit Court of Appeals has jurisdiction to consider this case pursuant to 28 U.S.C. § 1291 and Federal Rule of Appellate Procedure 4. This case involves a direct appeal of a criminal conviction and sentence imposed in the United States District Court for the Northern District of Georgia, Atlanta Division.

## STATEMENT OF THE ISSUES

I.    The district court erred by denying Mr. Christolin's motion to
      suppress his statements.

   A. Mr. Christolin unequivocally invoked his right to remain silent.

   B. Mr. Christolin's purported waiver of his right was not knowing and
      voluntary due to Agent Phillipe's limited Creole abilities.

II.   The district court violated Mr. Christolin's Confrontation Clause
      rights by admitting his statement without subjecting the agent who
      interpreted his statements to cross-examination.

## STATEMENT OF THE CASE

### I. Course of Proceedings

Amos Christolin was charged with one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C § 846.  (Doc. 1).[1]  Mr. Christolin proceeded to trial and was convicted. (Doc. 219).  Mr. Christolin was sentenced to 120 months in custody, which was the mandatory minimum for the crime of conviction. (Doc. 255 at 2). This appeal follows.

### II. Statement of Facts

#### A. Motion to Suppress Statements

Prior to trial, Mr. Christolin, who was born in Haiti and speaks Haitian Creole, moved to suppress his statement, which was made when officers came to execute a warrant for his arrest.  (Docs. 49, 54, 146).  The interview was conducted by three agents, but only one—Agent Jacque Phillipe—spoke any Haitian Creole.  (Doc. 157 at 10-11).  Agent Phillipe interpreted during the interview, and he advised Mr. Phillipe of his Miranda rights, as follows:[2]

---

[1] Mr. Christolin was initially charged with other counts, but they were dismissed prior to trial.  (Docs. 1, 64, 70).

[2] This description is taken from the district court's order adopting the report and recommendation and denying Mr. Christolin's motion to suppress.  (Doc. 189).

S/A Phillipe initially advised Mr. Christolin of his *Miranda* rights by saying, "OK. Any statement you made can be used against you in Courts or any legal institution. My - Creole is not very strong." (Interview Tr., Doc. 84-1 at 5.) S/A Philippe then followed up by giving Christolin a Creole translation of his *Miranda* rights to read, saying, "So, please go ahead and read to make sure you understand." (*Id.* at 6.) Mr. Christolin then responded (in Creole), "I don't fully understand this. So, you can, you can use any statement. . . " (*Id*. at 7.) Philippe then asked one of his colleagues to give him an English version of the form and Christolin commented in Creole, "Well, if I don't understand it in Creole, I won't understand it even more in English." (*Id.*) S/A Philippe then responded, "No, I will explain to you -- No, no, rights form in English." (*Id.*) Philippe then proceeded to give his own rough English to Creole translation of the form's *Miranda* warning provisions, similar to what occurred in the *Youte* case, and stated: "OK. I will explain to where, OK, uh, this just said, um, everything you tell us, um, we can use in Courts when we -- are in Courts or when we're in front of a judge." (*Id.* at 7.) After Christolin responded "OK," _S/A Phillipe provided the form in both Creole and English and stated: "You have, you have the right to an attorney before you make any statements and before you answer any questions they may ask you when they are interviewing you." _(*Id.*) Christolin interrupts, stating "inter—" and S/A Phillipe corrects: "—interrogating you. Do you understand?" Christolin responds affirmatively. (*Id.*) S/A Phillipe then finally says that Christolin has a right to an attorney, and that if he cannot afford an attorney, one will be provided. (*Id.* at 8.) Christolin then states that he understands for a final time. (*Id.*)

Directly after Christolin confirmed that he understood these rough translations and initialed the *Miranda* form as to the items S/A Philippe had just translated, S/A Philippe asked, as set forth earlier, "So are you willing to speak with us?" and Christolin responded, as outlined above, "No, I'm willing to listen!" Immediately thereafter, Philippe states, "No, I am asking if you want to speak with us. You will need to sign — _if you're

willing to speak with us ...." And at that juncture, Christolin says, "Yeah, OK."

(Doc. 189 at 6-8).

The magistrate judge conducted an evidentiary hearing on the motion. (Doc. 157). At the hearing, the government called special Agent Philippe from Homeland Security Investigations ("HSI"). (*Id.* at 4). Agent Philippe grew up speaking Haitian Creole, passed the Haitian Creole proficiency test, and received additional compensation from HSI for being proficient in Haitian Creole. (*Id.* at 5-6). He had advised between 20 and 30 defendants of their *Miranda* rights in Haitian Creole. (*Id.* at 6-7). Agent Phillipe was born in the United States and was not a Haitian native, but his parents were born in Haiti. (*Id.* at 28). He never had any formal training in Creole. (*Id.* at 29). He is the only one in his office with the ability to understand or speak Creole. (*Id.* at 31).

In November 2018, Agent Phillipe and other agents interviewed Mr. Christolin when they went to his house to arrest him. (*Id.* at 7-8). Mr. Christolin was under arrest at the time of the interview. (*Id.* at 8). The interview was recorded, and the recording and a transcript were both admitted at the hearing. (*Id.* at 8-10).

Agent Phillipe testified that he read the *Miranda* rights to Mr. Christolin in Creole and that he provided Mr. Christolin with a card that contained the rights in Creole, which he signed. (*Id.* at 11-12, 15-16). He testified that, at one point, Mr. Christolin did not understand, but that when he translated the right from English into Creole, Mr. Christolin then "initialed the line stating that he understood." (*Id.* at 12). Agent Phillipe understood the form better in English than in Creole and he wanted to use the English form to help him translate it into Creole, although the form had the rights in Creole. (*Id.* at 34-36). When Agent Phillipe read part of the form to Mr. Christolin, he did not know what at least one word in Creole meant, and he told Mr. Christolin that his Creole was "not very strong." (*Id.* at 35).

Agent Phillipe read the rights to him and asked if he was willing to speak with them, Mr. Christolin stated, "No, I am willing to listen." (*Id.* at 13). At that time, Agent Phillipe was using Creole, and Mr. Christolin clearly responded that he was only willing to listen. (*Id.* at 36-37). Agent Phillipe agreed that there was "nothing equivocating" about Mr. Christolin's response. (*Id.*). Yet, Agent Phillipe decided that Mr. Christolin "needed more explanation," and then testified that he "went further to try to clarify his response back." (*Id.* at 13, 37). He told Mr. Christolin that he would

"need to sign if you're willing to speak with us, you will sign here to state that you're willing to speak with us." (*Id.* at 39).

Mr. Christolin called Nicholas Andre, a professor of Haitian Creole and French, to testify. (*Id.* at 48). Andre testified that Agent Phillipe was a heritage learner of Haitian Creole, which means that they might learn the language at home but that they will not "fully operate in the language." (*Id.* at 53). Agent Phillipe could not fully speak the language. (*Id.*). Andre pointed out several problems with Agent Phillipe's interpretation of the *Miranda* warnings, including that:

- He told Mr. Christolin that "you may keep your silence" instead of "you have a right to remain silent," (*id*. at 53-54);

- He used several words in Creole that had no meaning in Creole, (*id*. at 55, 59);

- Agent Phillipe included English words in his translations, including the words "use" and "court" when he was explaining that anything he said could be used against him in court, (*id*. at 58-59);

- Agent Phillipe did not advise him that the statement could be used against him, specifically, (*id*. at 58-59);

- The agent responded to his questions with commands to sign or initial the form, (*id*. at 60-61); and

- There is no right to remain silent in Haiti, (*id.* at 63).

Andre testified that the agent was not fully proficient in Haitian Creole, as would be necessary to convey the *Miranda* warnings to someone who was not familiar with them. (*Id.* at 63).

In his post-hearing brief, Mr. Christolin argued that his alleged waiver of his *Miranda* rights resulted from coercion and deceptive police conduct because Agent Phillipe continued to question him after being told that Mr. Christolin did not understand the rights at several different times and that he did not want to speak with the officers. (Doc. 163 at 9-10). Mr. Christolin argued that Agent Phillipe did not further explain the *Miranda* warnings when Mr. Christolin said, "No, I'm willing to listen!" and instead only told him that he needed to sign if he was willing to speak with them. (*Id.* at 10-11). Mr. Christolin argued that he unequivocally told the officers he did not want to speak with them by responding, "No." (*Id.* at 11-13). Mr. Christolin also argued that he did not have a full understanding of the *Miranda* warnings because of Agent Phillipe's limited ability to speak Haitian Creole. (*Id.* at 13-19). Mr. Christolin also argued that the written waiver was

insufficient to prove that the waiver of his rights was knowing and voluntary.  (*Id.* at 19-21).

The magistrate judge issued a report and recommendation ("R&R"), concluding that Mr. Christolin's motion to suppress should be denied.  (Doc. 165).  Mr. Christolin timely objected, (doc. 169), and the district court overruled Mr. Christolin's objections, (doc. 189).  Although the district court ultimately denied Mr. Christolin's motion, it noted that the motion presented a "somewhat close question because of the way in which the officers handled the *Miranda* warning process during the interview and the related Haitian Creole and English language issues that arose in the context of the agents' interview of Mr. Christolin."  (Doc. 189 at 2).  The district court acknowledged this Court's unpublished decision in *United States v. Youte*, 769 F. App'x 685, 688 (11th Cir. 2019), which involved the same Creole-speaking agent, Agent Philippe, and an attempt to *Mirandize* a defendant in Creole.  (*Id.* at 6).  However, after recounting the interaction that led to Mr. Christolin's participation in the interview, the district court concluded that the facts here reflected "a more troubling course of interrogation than occurred in *Youte*," noting that Mr. Christolin had "affirmatively asserted his

intent not to speak—and only to listen to what the officers had to say." (*Id.* at 7-8).

Nevertheless, the district court could not "find on this record either that Defendant unequivocally communicated his refusal to agree to speak with the agents or to proceed with the interview under the governing legal authority." (*Id.* at 8-9). The court also found that there was insufficient evidence to establish that Mr. Christolin "was subject to either serious coercive tactics or force such that his intention not to speak was overridden." (*Id.* at 9). Accordingly, the court found that Mr. Christolin had "made a voluntary, knowing, and intelligent waiver of his *Miranda* rights and that the Government ha[d] established that the waiver was voluntary," although it also noted that the government should address the "pattern of using rough translations relating to the complex matters addressed within the *Miranda* warnings." (*Id.* at 9 & n.3).

**B. Motion in Limine**

Prior to trial, Mr. Christolin filed a motion in limine to exclude the portions of the statement in which Agent Phillipe was interpreting Mr. Christolin's responses, noting that the responses had been subsequently interpreted by someone else. (Doc. 205 at 1-2). The government objected to

that because it would create extensive confusion, and requested that the court issue a limiting instruction that Agent Phillipe's translations were to be used only "for the limited purpose of allowing the jury to follow the interview and, to the extent that these statements differ from the translations next to each Haitian Creole statement, they should rely on the latter." (Doc. 207 at 3).

## C. Trial

### i. The government's case-in-chief

In August 2017, Customs and Border Protection ("CBP") officers at the Miami International Airport discovered "an anomaly" during a random search of packages delivered by a company called Amerijet. (Doc. 280 at 263, 268-73).[3] The anomaly was 28 kilograms of cocaine hidden in large buckets of butter. (*Id.* at 274-76, 280-81).

The butter was supposed to be delivered to an address in Atlanta, so the Miami officers contacted agents in Atlanta to orchestrate a controlled delivery of the cocaine. (*Id.* at 309-10). Agents in Atlanta replaced the cocaine with sham cocaine and had it delivered as though it had not been

---

[3] The citations refer to the black page numbers in the upper right-hand corner of the page, not the blue page numbers that are part of the CM/ECF stamp.

intercepted. (Doc. 284 at 642-44, 647-48). Vital Joseph was the ultimate recipient of the butter delivery. (*Id.* at 649).

Joseph, who is also Haitian, testified that he initially worked with Jean Yves Durogel to try to import coffee. (Doc. 280 at 373-75). Eventually, though, Durogel began sending cocaine hidden in butter. (*Id.* at 375). Joseph testified that he delivered the cocaine to various people in the United States at Durogel's direction. (*Id.* at 376-77).

Durogel sent Vital messages that listed several names, including "Patizan," phone numbers for each name, and a number of days associated with each name. (*Id.* at 379, 382-83; Gov't Exhs. 4B, 4D, 8A, 8B, 8C). The number of days was the number of kilograms each person was to receive. (Doc. 280 at 379-80). Joseph testified that he would put the cocaine in gift bags and then drive them to Miami to deliver them. (*Id.* at 384-85). Joseph stated that he delivered the gift bags to Patizan, who he identified as Mr. Christolin, on three separate occasions. (*Id.* at 386-87; see also Doc. 284 at 672-74). Joseph testified that he met with Mr. Christolin near Miami Edison High School twice and that he met with him in a Wendy's parking lot once. (Doc. 280 at 390-93).

CBP officers seized Mr. Christolin's phone during a border search when he was returning from Haiti.  (Doc. 283 at 544-48).  The phone number associated with Mr. Christolin was 786-203-2316, which was the number associated with Patizan in the messages between Durogel and Joseph.  (Doc. 284 at 663-69).

The government presented cell-site evidence that showed Joseph traveling from Georgia to Miami around the dates of the messages from Durogel and shortly after other Amerijet deliveries: February 24-26, 2017, March 24-26, 2017, and July 14-16, 2017.  (Doc. 283 at 503-20; Doc. 284 at 701-07).  The cell-site evidence also indicated that the phone ending in 2316 was briefly in somewhat close proximity to Joseph's phone number on those occasions, including twice near Miami Edison High School and once near a Wendy's.  (*Id.* at 506-09, 512-14, 517-19).

The government had no evidence of communications between Mr. Christolin and Durogel, including any directions as to where Mr. Christolin was supposed to take the cocaine.  (Doc. 284 at 753-54).  There was no evidence presented that Mr. Christolin received any money for transporting the cocaine—or that he paid anyone involved for the cocaine.

## ii.   Mr. Christolin's statement

The government prepared a transcript of Mr. Christolin's statement. (Doc. 284 at 730-31).   The transcript contained: (1) Mr. Christolin's statements; (2) Agent Phillipe's statements, including his interpretations of Mr. Christolin's statements; and (3) a subsequent translation of the statements made in Haitian Creole by Nadege Cherubin. (Gov't Exh. 3TR2).[4] The parties stipulated that Cherubin's translation was accurate. (Doc. 284 at 730-31).   However, there was no agreement as to the accuracy of Agent Phillipe's interpretations, and the defense in fact moved to redact those portions of the interview and transcript. (Doc. 205 at 1-2).

The district court excluded large portions of Mr. Christolin's statement due in part to the issues related to the translations. (Doc. 283 at 475-78).[5]   The court repeatedly indicated that Agent Phillipe's interpretation was often different from that of Cherubin's translations.   (*Id*. at 476-78, 581).   Other problems existed too, including that, at one point, Agent Phillipe stated that

---

[4]  The transcript was marked at trial and given to the jurors, but not admitted. (Doc. 284 at 731).  It does not appear that it is otherwise.  Consequently, Mr. Christolin is filing a motion to supplement the record with the transcript simultaneously with the brief, and he will include it in the appendix to this brief.

[5]  The court also excluded portions of the statement due to concerns about undue prejudice under Federal Rule of Evidence 403.  (Doc. 283 at 475-78).

Mr. Christolin "knows what's going on. He's Haitian." (*Id.* at 479). The court alerted the parties to a potential Confrontation Clause issue if the interpreters were not testifying, and after further discussion by the parties, stated, "there's been enough about this, and I considered it preserved, but I'm just not sure what to do. But at least I've aired the concern." (*Id.* at 571-75). Mr. Christolin noted that he had moved to exclude Agent Phillipe's interpretation, and the government again opposed that request. (*Id.* at 572-74). The government again brought up the idea of the limiting instruction, and Mr. Christolin responded that it was insufficient to address the issues caused. (*Id.* at 574-75).

The court stated that it was trusting the parties to think about the issue, but would not hold the proceedings up any further—although it noted again that it was concerned. (*Id.* at 576). Later, the court returned to the confrontation issue and noted that it "remained concerned" in part due to the "prejudice and confusion" that was likely to result from the inclusion of Agent Phillipe's interpretation and the subsequent translation. (*Id.* at 625). The court stated that it was going to instruct the jury about the translation. (*Id.*).

The government introduced Mr. Christolin's statement through Special Agent Matthew Devane, who does not speak Haitian Creole, and the government did not call Agent Philippe to testify at trial. (Doc. 284 at 728-42, 746-47). The jury was provided with the transcript to use to follow along while the statement was played, but the transcript was not admitted into evidence and did not go back with the jury, (Doc. 284 at 730-31; Doc. 283 at 625). Regarding the transcript, the court instructed the jury as follows:[6]

> If you go to page 32, the very top. On the top left box, it gives the Haitian Creole language. On the right side is what the certified transcriber, later how he interpret -- she interpreted this. Below is Special Agent Phillipe telling the other agents his sense of what Mr. Christolin said.

> The transcript that the certified court reporter made the -- this interpretation, this translation later based on a recording, not -- she was not present during the interview. So what you have here is the court reporter's later translation based on the -- listening to the transcript, and then Agent Phillipe telling his colleagues what he -- the way he perceived the testimony or the statement made, and he also would then translate for their questions for Mr. Christolin.

> Now, let me give you an additional instruction. So you may notice that some of Special Agent Phillipe's contemporaneous remarks differ from the translations next to each Haitian Creole statement. Some of Special Agent Phillipe's remarks are his efforts to explain to his colleagues his own personal [sense] of

---

[6] Mr. Christolin did not have any objection to the instruction, which was proposed by the court. (Doc. 284 at 633, 638).

what Mr. Christolin is saying; therefore, Special Agent Phillipe's words are not necessarily an actual verbatim translation and cannot be relied upon as such.

The translations provided next to each Haitian Creole statement were translated and transcribed sometime after the interview based on the recording of the interview. The portions labeled "UI", which at the bottom of that page 32 and Mr. Christolin's statement, and you see the "UI" in brackets, it looks like that one or more words were unintelligible to the translator. And sometimes that also happens in connection with something that Mr. Phillipe says.

The Court is not aware of how the translator handles the translation in such circumstances or whether she handles this in a uniform manner. There are a number of speakers reflected on the recording. Some of the questions posed are statements made by the agents' intel interrogation techniques or tactics. Such questions or statements should not be treated as established facts in evidence. They are simply questions.

(*Id.* at 732-34).

The government highlighted various portions of the statement to the jury by asking Agent Devane about them. (Doc. 284 at 728-42). These portions included that: Mr. Christolin lived at his mother's house, which was located at 14420 Northwest 16th Court, Miami, Florida; Mr. Christolin used phone number 786-203-2316 and he was the only person who used that phone; Mr. Christolin stated that "A lot of people call me Patizan"; Mr. Christolin acknowledged that his phone was seized upon returning from Haiti; Mr. Christolin agreed that he had picked up a package near Miami

Edison High School and that his description of the person who dropped off the package matched the description of Vital Joseph.  (*Id.*).

In closing, the government used Mr. Christolin's statements to argue that he had admitted relevant facts, including the information just described. (Doc. 285 at 859-61).   The government also argued that the statement evidenced Mr. Christolin's consciousness of guilt and argued that he was not credible.  (*Id*. at 859-61, 878-80).

### D. Verdict and Sentencing

The jury found Mr. Christolin guilty.  (Doc. 219).  He was sentenced to the mandatory minimum of 120 months in custody, although the district court noted that it would have sentenced him below the mandatory minimum if it could have.  (Doc. 268 at 52-53; Doc. 255 at 2).

## STANDARD OF REVIEW

This Court applies a mixed standard of review to decisions on a motion to suppress, as it presents a mixed question of law and fact. *United States v. Virden*, 488 F.3d 1317, 1321 (11th Cir. 2007). This Court will review the findings of fact for clear error and the district court's legal conclusions *de novo*. *Id.*

This Court generally reviews evidentiary rulings for an abuse of discretion. *United States v. Mateos*, 623 F.3d 1350, 1365 (11th Cir. 2010). However, it reviews *de novo* whether hearsay statements are testimonial for purposes of the Confrontation Clause. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010).

## SUMMARY OF THE ARGUMENT

The district court erred by denying Mr. Christolin's motion to suppress his statements because the record shows that Mr. Christolin unequivocally stated that he did not want to speak with the agents, and any purported waiver of his rights was not knowing and voluntary. When asked directly if he wanted to speak with the agents, he said, "No, I want to listen!" The "no" clearly indicated he did not want to speak with them, and that he only wanted to hear what they had to say. The complications with the Haitian Creole interpretation establish that any purported waiver was not knowing and voluntary. The district court thus erred by denying Mr. Christolin's motion to suppress, and this Court should vacate his conviction on this basis.

Mr. Christolin's Confrontation Clause rights were violated by the introduction of his interpreted statement without the testimony of the agent who acted as the Haitian Creole interpreter during the interrogation. The government played the recording of the statement through the case agent, who was not the interpreter, and then asked the case agent various questions about Mr. Christolin's comments. Mr. Christolin had the right to confront Agent Phillipe at trial about his Haitian Creole interpretation, which was the subject of numerous challenges throughout this litigation. The government

19

cannot establish that this constitutional error was harmless beyond a reasonable doubt, as it relied on Mr. Christolin's statements at length during closing to challenge his defense at trial. Accordingly, for this reason too, this Court should vacate Mr. Christolin's conviction and remand for further proceedings.

<u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

**I.** **<u>The district court erred by denying Mr. Christolin's motion to suppress his statements.</u>**

Absent certain procedural safeguards, a statement given during custodial interrogation is presumed to be compelled in violation of the Constitution. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). To dispel that presumption of compulsion, the person in custody must be advised of certain rights. *Id*. The person in custody may then waive his rights, but to be operative the waiver must be made voluntarily, knowingly, and intelligently. *Id*. If the government violates a person's right against compelled self-incrimination, then generally the compelled statements must be suppressed. *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

Here, the district court erred by denying Mr. Christolin's motion to suppress. As the district court recounted and as described in more detail below, Agent Phillipe and Mr. Christolin haltingly discussed the *Miranda* warnings. First, Agent Phillipe tried to read the warnings in Creole off of the card, but when he encountered difficulties, he stated either that his Creole was not that good or not very strong. (Doc. 152-1 at 3-5; doc. 151-1 at 1). He then asked Mr. Christolin to read the form himself, but Mr. Christolin stated that he did not understand what it meant. (Doc. 152-1 at 6) ("I don't,

I don't fully understand this. So, you can, you can use any statement…."). At that point, Agent Phillipe, instead of using the Creole on the card, used the English form to attempt to translate the warnings from English into Creole, despite his limited abilities. (*Id.* at 6-7). This is because Agent Phillipe did not understand at least one Creole word on the form. (Doc. 157 at 35).

Agent Phillipe and Mr. Christolin continued to discuss the *Miranda* warnings. Eventually, Agent Phillipe stated, "Just say whether you understand?" and Mr. Christolin asked, "No, do I put initial?" (Doc. 152-1 at 10). The agent responded by saying either, "No, you will initial here to state *if* you understand," or "No, you will initial here to state *that* you understand." (*Id.* at 10; Doc. 151-1 at 3) (emphases added). The government's interpreter translated the statement using "if you understand," while Professor Andre testified that the statement was more of a command — that he should initial to indicate that he did in fact understand. (Doc. 152-1 at 10; Doc. 151-1 at 3; Doc. 157 at 61).

Agent Phillipe stated, "Now, I will ask you if you wish to speak with us. We'll explain to you what's going on. You can give us, give, give us back your response." (Doc. 152-1 at 11). Mr. Christolin responded, "All right!" (*Id.*). Agent Phillipe asked, "So, are you willing to speak with us?" (*Id.*). Mr.

Christolin responded, "No, I'm willing to listen!" (*Id.*). Agent Phillipe did not discontinue questioning and instead stated, "No, I am asking if you want to speak with us." (*Id.*). After Agent Phillipe instructed him to sign in order to speak with them, Mr. Christolin agreed to speak with the agents. (*Id.*).

## A. Mr. Christolin unequivocally invoked his right to remain silent.

"When a person undergoing a custodial interrogation states that he wishes to remain silent the questioning must end, and if he expresses a desire to consult with an attorney, the questioning must cease until one is provided for him." *United States v. Acosta*, 363 F.3d 1141, 1151 (11th Cir. 2004) (*citing Miranda*, 384 U.S. at 473–74). However, the suspect's invocation of his rights must be unequivocal. *Id.* A suspect must articulate his desire "with sufficient clarity that a reasonable police officer in the circumstances would understand the statement to be an assertion of the right to remain silent." *Id*.

The district court erred by finding that this record did not demonstrate a clear invocation of Mr. Christolin's right to remain silent. After Agent Phillipe and Mr. Christolin discussed the warnings, Agent Phillipe asked, "So are you willing to speak with us?" and Mr. Christolin responded, "No, I'm willing to listen!" (Doc. 152-1 at 11). Agent Phillipe agreed that there was "nothing equivocating" about this response. (Doc. 157 at 36-37). Agent

Phillipe had told Mr. Christolin that they would explain what was going on and that Mr. Christolin could give his response, but when asked directly if he wanted to speak with them, Mr. Christolin's response was, "No." (Doc. 152-1 at 11). Mr. Christolin clarified that he was willing to listen, *i.e.*, to hear what they had to say, but he had responded already that he was not willing to speak. (*Id.*).

This was an unequivocal invocation of his right to remain silent, and at that point, the agents should have stopped questioning him. *See Acosta*, 363 F.3d at 1151. Yet, Agent Phillipe continued and indicated that Mr. Christolin needed to sign or initial the form to speak with them, which he eventually did. (Doc. 152-1 at 11-12). This was a violation of Mr. Christolin's rights, and the district court should have suppressed his statements.

### B. Mr. Christolin's purported waiver of his right was not knowing and voluntary due to Agent Phillipe's limited Creole abilities.

The district court further erred by not finding that any purported waiver of his right to remain silent was not knowing and voluntary due to the confusion caused by Agent Phillipe's limited Creole skills. After admitting that his Creole was either not very good or not very strong, Agent Phillipe then instructed Mr. Christolin to read the *Miranda* warnings in Creole, but Mr. Christolin said that he did not fully understand it. (Doc. 152-

1 at 6).  Then Agent Phillipe, instead of using the Creole on the cards, used the English form to translate into Creole words that the agent understood.  (*Id*. at 6-7).  This is because Agent Phillipe did not understand at least one word in Creole meant.  (Doc. 157 at 35).  While Mr. Christolin responded, "Yeah" when asked if he understood, there was no indication that he actually understood or if he was just agreeing with the agent.  The confusion caused here—including the agent's unfamiliarity with at least one Creole word on the rights form, (*id*.), his use of purported Creole words that had no meaning, (doc. 157 at 55, 59), his own use of English words during the interpretation, (*id*. at 58-59), and Mr. Christolin's statement that he did not understand—demonstrate that any waiver of his right to remain silent was not knowing and voluntary.

The government, magistrate judge, and—to a lesser degree—the district court relied on this Court's unpublished decision in *United States v. Youte*, 769 F. App'x 685, 686-87 (11th Cir. 2019), to conclude that Agent Phillipe's *Miranda* warnings were sufficient.  Yet, there, the defendant pointed only to two phrases that he argued did not sufficiently advise him that (1) his statements could be used against him in court, and (2) he had the unconditional right to have a lawyer during the interrogation.  *Youte*, 769 F.

App'x at 686-87. Here, though, as the district court conceded, there were more problems with the *Miranda* warnings. Specifically, as noted above, Mr. Christolin did indicate that he did not understand them, asked for more clarification, and then very clearly said that he did not want to speak with the officers and would only listen. In the face of this clear statement that he did not wish to speak, Agent Phillipe did not stop, but instead continued to push Mr. Christolin to speak with them, using language that was more of a command than a question. (Doc. 157 at 60-61). Therefore, *Youte* does not dictate the outcome here.

Further, the district court's order focused on whether Mr. Christolin invoked his right to remain silent. The court found that the waiver was knowing and voluntary, but it did not address the concerns articulated in Mr. Christolin's post-hearing briefing in any meaningful way. (Doc. 189 at 9). For these reasons, the district court erred by concluding that Mr. Christolin did not unequivocally invoke his right to remain silent and that Mr. Christolin's waiver was knowing and voluntary.

### C. The government cannot meet its burden to establish that this error was harmless beyond a reasonable doubt.

Because Mr. Christolin has raised a constitutional issue, the government must establish that the error is harmless beyond a reasonable

doubt.  *United States v. Stewart*, 576 F.2d 50, 55 (5th Cir. 1978).  In determining if the error was harmless beyond a reasonable doubt,  the mere fact that the evidence may be sufficient to sustain a conviction does not answer this inquiry.  *United States v. Khoury*, 901 F.2d 948, 960 (11th Cir. 1990). Instead, this Court will "apply a more stringent standard against the government." *Id.*  In this analysis, "the standard cuts more sharply against the government: there must be *no reasonable possibility that the unconstitutionally obtained evidence contributed to the conviction.*"  *Id.* (emphasis added).

Here, the government cannot prove that the error is harmless because it extensively relied on Mr. Christolin's statement in closing.   The government argued that it provided evidence that confirmed its theory of prosecution, including that Mr. Christolin acknowledged using the name Patizan and the phone number in question.  (Doc. 285 at 859-61, 878-80).  But it also used the statement to argue that Mr. Christolin had changed his behavior after being stopped at the border, such that it reflected his consciousness of guilt.  (*Id.*).  Finally, the government used his statement to cast doubt on his only defense at trial—that his participation was not knowing or willful.  Given the government's reliance on his statement in

closing, the government cannot establish that there is no reasonable possibility that the statement contributed to Mr. Christolin's conviction.

## II. The district court violated Mr. Christolin's Confrontation Clause rights by admitting his statement without the agent who interpreted his statements to cross-examination.

The admission of hearsay that is testimonial in nature is prohibited by the Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine him. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). "Statements taken by police officers in the course of interrogations are . . . testimonial under even a narrow standard." *Id.* at 52.

This Court has held expressly that when an interpreter is used during an interview, the interpreter becomes the declarant of the out-of-court statements, such that the defendant has the right to cross-examine the interpreter at trial if the statement is presented as evidence. *United States v. Charles*, 722 F.3d 1319, 1323-25 (11th Cir. 2013) ("Accordingly, because Charles has the right, under the Confrontation Clause, to confront the 'declarant,' that is the person who made the out-of-court statement, she has the right to confront the Creole language interpreter about the statements to which the CBP officer testified to in court.").

This Court specifically rejected the argument that, because the interpretation was reliable, there was not a Confrontation Clause problem, given that the Supreme Court has expressly overturned any precedent holding that out-of-court statements with an indicia of reliability were not subject to the Confrontation Clause. *Id.*; *see also Smith v. Arizona*, No. 22-899, 602 U.S. ___, manuscript op. at *2 (June 21, 2024) (the Confrontation Clause requires "not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination" (quotation omitted)).

## A. The introduction of Mr. Christolin's interpreted statements violated his Confrontation Clause rights.

Here, the introduction of Mr. Christolin's interpreted statements at trial without the testimony of Agent Phillipe violated Mr. Christolin's Confrontation Clause rights. The jury was presented with Agent Phillipe's out-of-court statements, including his belief of what Mr. Christolin said, but Mr. Christolin did not have the ability to cross-examine Agent Phillipe about any of it. (*See* doc. 284 at 728-47). This Court's decision in *Charles* compels this conclusion that this was a violation of Mr. Christolin's Confrontation Clause rights, and this issue alone is sufficient to find that his conviction should be vacated.

At trial, the court seemed to think that the issue was more complicated because the transcript included the subsequent translations from the certified interpreter. (*See* doc. 283 at 571-75). However, the transcript was neither admitted as evidence nor sent back to the jury for its use while deliberating. (Doc. 284 at 730-31). Therefore, the only evidence that the jurors could properly consider was the recording, including Agent Phillipe's real-time interpretation, and Agent Devane's testimony about the statement. Yet, Mr. Christolin had no ability to cross-examine Agent Phillipe about his interpretation—which the district court repeatedly noted was contradicted by Cherubin's translation.[7] (*See* doc. 283 at 476-78, 581). Accordingly, the admission of the statement violated Mr. Christolin's Confrontation Clause rights.

If anything, the presence of the transcript with the later translation simply compounded the problem. Instead of just having the one set of interpretations, the government presented two interpretations to the jury, but Mr. Christolin did not have the ability to cross-examine the declarant of

---

[7] While Mr. Christolin had the ability to cross-examine Agent Phillipe about the *Miranda* warnings at the evidentiary hearing, there was no showing that Agent Phillipe was unavailable as a witness at trial, and therefore, the prior ability to conduct a limited cross-examination did not satisfy the Confrontation Clause.

either.  *See United States v. Curbelo*, 726 F.3d 1260, 1273-74 (11th Cir. 2013) (translator's implicit representation that the transcripts were correct qualifies as a hearsay statement for purposes of the Confrontation Clause); *United States v. Richard*, 678 F. App'x 927, 938-40 (11th Cir. 2017) (introduction of interpreted statements was permissible where a witness subject to cross-examination testified that he had reviewed the transcript and translation and confirmed that they were accurate).  Here, while Mr. Christolin stipulated to the accuracy of the certified translations, he did not have the ability to cross-examine Agent Phillipe or the subsequent interpreter about the conflicts between the two or the impact of the incorrect interpretation on the course of the interview. This was relevant for the jury to consider as it evaluated Mr. Christolin's statement.  (*See* Doc. 285 at 887 (instructing the jury to evaluate Mr. Christolin's statement with caution and great care and to decide, *inter alia*, how much weight to give to it after considering all of the evidence about the statement, including the circumstances under which it was made)).

Moreover, the statement was translated after the interpreter reviewed Agent Phillipe's real-time interpretation, given that both were in the transcript.  If the subsequent interpreter relied in any part on the truthfulness

or accuracy of Agent Phillipe's interpretation, then Mr. Christolin would still be entitled to cross-examine both the interpreter and Agent Phillipe. *See Smith v. Arizona*, manuscript op. at 8 (holding that where a lab analyst relied on testing conducted by a separate analyst, the underlying analyst's results were offered for the truth of the matter and were subject to the Confrontation Clause so long as they were also testimonial).[8] Accordingly, the use of the transcript only exacerbated the violation of Mr. Christolin's rights, as it deprived him of his Confrontation Clause rights as to both Agent Phillipe and the subsequent translator.

**B. The government cannot meet its burden to show that the error was harmless beyond a reasonable doubt.**

Because this constitutional issue was preserved,[9] the government has the burden of proving that the error was harmless beyond a reasonable doubt. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination

---

[8] Here, there is no question that Mr. Christolin's statements were testimonial, as they were given to the police in the context of a post-arrest interrogation. *Crawford*, 541 U.S. at 52.

[9] The district court specifically discussed this issue with the parties and informed the parties that it considered the issue preserved. (Doc. 283 at 574-75)

were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.*

Here, the government cannot meet this burden. The importance of the right to remain silent is obviously well-established. *Miranda*, 384 U.S. at 458-461 (describing the long history of the right to be free from self-incrimination). But here, the government was able to introduce Mr. Christolin's statement, where he was largely speaking in his native language and where he had difficulty understanding the English spoken by the agents. The government was then able to present what it believed Mr. Christolin's statements meant by playing the real-time interpretation by Agent Phillipe, whose capacity to speak and understand Haitian Creole is, by his own admission, lacking. (*See, e.g.*, doc. 157 at 35).

In addition to concerns about his abilities, the record is replete with concerns about the accuracy of Agent Phillipe's interpretation, including not only Professor Andre's testimony at the evidentiary hearing but also the district court's repeated commentary on the contrast between Agent Phillipe's interpretation and the subsequent translation. (Doc. 157 at 55, 63). Despite these myriad concerns, Mr. Christolin had no ability to cross-examine Agent Phillipe about his interpretation or the role that he played in

communicating between the agents and Mr. Christolin. Especially given the importance of a defendant's right to be free from self-incrimination, the government cannot prove that the admission of his statement without the ability to cross-examine Agent Phillipe was harmless beyond a reasonable doubt.

Further, at trial, Mr. Christolin did not dispute that he met up with Vital Joseph to pick up a delivery at least once, but he argued that he did not knowingly participate in a conspiracy to possess with the intent to distribute cocaine. (Doc. 285 at 869-71, 877). The government used Mr. Christolin's statement to corroborate its case, and it also used his statement to cast doubt on his defense. It discussed his statement at length in its closing argument, specifically contending that his statements during the interview were not credible and also showed his consciousness of guilt. (Doc. 285 at 859-61, 878-80). As such, the government cannot establish that there is no reasonable possibility that the improper introduction of his statement contributed to the conviction. This Court should vacate Mr. Christolin's conviction and remand for further proceedings.

## CONCLUSION

For all of the reasons articulated above, this Court should vacate Mr.

Christolin's conviction and remand for further proceedings.

Dated:  This 12th day of July, 2024.

Respectfully submitted,


/s/ *Leigh Ann Webster*
LEIGH ANN WEBSTER
Georgia State Bar Number: 968087
Strickland Webster, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
404-590-7967

## CERTIFICATE OF COMPLIANCE

This brief contains 7,018 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Brief was filed by uploading it with the Eleventh Circuit's Electronic Filing System which will automatically serve opposing counsel with the Brief.

Dated:  This 12th day of July, 2024.

<u>/s/ *Leigh Ann Webster*</u>
LEIGH ANN WEBSTER
Georgia State Bar Number: 968087
Strickland Webster, LLC
830 Glenwood Ave SE
Suite 510-203
Atlanta, GA 30316
404-590-7967